IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **HAYLIE BROCK KNUPPEL,** | § | |
| *Plaintiff,* | § | |
| | § | **6:18-CV-00048-ADA** |
| v. | § | |
| | § | |
| **TEXAS HEALTH AND HUMAN SERVICES,** | § | |
| *Defendant*. | § | |

## ORDER GRANTING DEFENDANT TEXAS HEALTH AND HUMAN SERVICES COMMISSION'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Texas Health and Human Services Commission's Motion for Summary Judgment. ECF No. 34. The Court considered the Motion, Plaintiff Haylie Brock Knuppel's Response (ECF No. 38), and Defendant's Reply (ECF No. 39). For the following reasons, the Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Haylie Brock Knuppel ("Knuppel") was diagnosed with epilepsy in 2011. In January 2016, Waco Center for Youth ("WCY") hired her as a Psychiatric Nursing Assistant I ("PNA I"). WCY is a facility within the Texas Health and Human Services Commission ("Defendant" or "HHSC"), which is the named defendant in this case.

WCY is a psychiatric treatment facility that serves teenagers with severe emotional difficulties or behavioral disorders. As a PNA I, Knuppel was assigned to monitor two or three patients in their daily afterschool activities. Among other things, she was expected to be prepared to do the following:

- Initiate and perform physical holds (restraints) of combative patients for up to 15 minutes;
- Help place combative patients into a restraint chair;

1

- Be left alone for hours to monitor an assaultive or self-injurious patient who is under doctor's order for special observations, and initiate restraint if needed;
- Intervene with combative or aggressive people;
- Perform CPR;
- Participate in strenuous physical training for Prevention or Management of Aggressive Behavior; and
- Perform job functions in an often loud and chaotic environment.

Motion at 5 ("MSJ at _") (citing Appx. 6–7 "Return to Work Letter"). These tasks are critically important to WCY in creating a safe environment given the potentially dangerous tendencies of some of the facility's patients who are suicidal or aggressive. Defendant reports that seventeen different staff members suffered physical injuries on the job at the hands of patients in the last two fiscal years. MSJ at 2 (citing Appx. 36 ¶ 5).

Knuppel informed WCY that she was epileptic when she volunteered at the facility after suffering a seizure there. Response at 2 (citing Declaration of Haylie Brock Knuppel at ¶ 4 ("Knuppel Decl. at __")). She reiterated her diagnosis when she was hired in early January 2016. *Id*. Critically, she confirmed at the time she commenced this position that her seizures were under control and that she had not had an epileptic seizure in the past eighteen months. MSJ at 4 (citing Deposition of Haylie Brock Knuppel at 80:5–13 ("Knuppel Depo. at __")). WCY treats all of its new hires uniformly, so Knuppel's employment began with a six-month probationary period. Knuppel suffered three seizures during that time.

Knuppel's first seizure occurred approximately only three days after she was hired. MSJ at 4; Knuppel Decl. at ¶ 5. WCY placed her on paid emergency leave and required her to get medical clearance from a licensed physician before she would be allowed to return to work. MSJ at 4; Knuppel Decl. at ¶ 5. WCY gave Knuppel a list of the essential functions of her position to inform the doctor who would perform her assessment. MSJ at 4. WCY also provided Knuppel with paperwork to request a reasonable accommodation. MSJ at 5. Knuppel presented a

2

physician's note indicating she could return to work with three restrictions: she could not drive, work in high places, or use dangerous equipment. Knuppel Decl. at ¶ 5. Working in high places or with dangerous equipment were not part of her position, and HHSC accepted the condition that Knuppel would not be permitted to drive. It is undisputed that Knuppel did not return the reasonable accommodation paperwork or otherwise request an accommodation.

Knuppel's next seizure occurred in May 2016. Knuppel Decl. at ¶ 6. Knuppel's third seizure occurred only about a month later. Knuppel Decl. at ¶ 7. On June 29, 2016, *before the probationary period ended*, HHSC terminated Knuppel's employment. Knuppel Decl. at ¶ 9. Knuppel alleges that in doing so, HHSC unlawfully fired her solely because of her epilepsy in violation of the Rehabilitation Act. HHSC responds that it legally terminated Knuppel because she could not perform the essential functions of her position. It also asserts the affirmative defense that she was a direct threat to the safety of herself and others given the nature of the facility.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). A material fact is one that is likely to reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating that no genuine dispute of material fact exists lies with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once presented, a court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Accordingly, the simple fact that the court believes that the non-moving party will be unsuccessful at trial is insufficient reason to grant summary judgment in favor of the moving party. *Jones v. Geophysical Co.*, 669 F.2d 280, 283 (5th Cir. 1982). However, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(c)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *DIRECTV Inc. v. Robinson*, 420 F.3d 352, 536 (5th Cir. 2001) (internal citations omitted).

## III. ANALYSIS

The Rehabilitation Act of 1973 ("RA"), 29 U.S.C. §§ 790 to 796., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, are federal antidiscrimination statutes that prohibit, among other things, employment discrimination against qualified individuals with disabilities. Although the RA preceded the ADA, Section 504 of the RA now incorporates by reference the standards used in the ADA to determine whether a defendant violated the RA. 29 U.S.C. § 794(d); *see also Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287–88 (5th Cir. 2005) ("This circuit, as well as others, has noted that, because the rights and remedies under both statutes are the same, case law interpreting one statute can be applied to the other."). "The only material difference between [Title II of the ADA and § 504 of the RA] lies in their respective causation requirements." *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...," 29 U.S.C. § 794(a) (emphasis added), whereas discrimination may be impermissible under the ADA even if it is not the only motivation for the adverse employment action.

Knuppel alleges employment discrimination in violation of the RA.[1] Discrimination may be proved with direct evidence or circumstantial evidence. "If the plaintiff produces direct evidence that discriminatory animus played a role in the employer's adverse employment decision, the burden of persuasion shifts to the defendant who must prove that it would have taken the same action despite any discriminatory animus." *Nall v. BNSF Ry. Co.*, 917 F.3d 335,

---

[1] Plaintiff originally sued under the ADA but amended her complaint after Defendant's motion to dismiss (ECF No. 5) to bring suit under the RA. ECF No. 12.

340 (5th Cir. 2019). In the absence of direct evidence, a plaintiff may prove discrimination through the traditional *McDonnell Douglas* burden shifting framework as outlined below. *Id*.; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### A. Knuppel Has Not Offered Any Direct Evidence of Discrimination

Knuppel contends that HHSC's direct threat defense is itself evidence of discrimination. Response at ¶ 26. In support of that contention, she relies heavily on Judge Costa's special concurrence in *Nall v. BNSF Ry. Co.*, 917 F.3d 335 (5th Cir. 2019) (Costa, J., concurring). There, he suggests that in cases "that turn on whether the disability renders the employee a safety risk (or the sometimes related statutory question whether the employee is unable to perform the essential functions of the job), there thus should not be a dispute about discriminatory intent" because the "'direct threat' defense draws a line not between discrimination and its absence, but between lawful and unlawful discrimination." *Id*. at 350. The controlling opinion, however, determined it could not "analyze this case in the streamlined manner" the concurrence advanced and instead used the familiar *McDonnell Douglas* burden-shifting framework.[2] *Id*. at 341 n.3. Indeed, affirmative defenses and alternative arguments in litigation are generally not admissions of the underlying alleged conduct. Knuppel does not offer any other potential direct evidence of discrimination.

### B. Knuppel Has Not Made A *Prima Facie* Case of Disability Discrimination

In the absence of direct evidence of discrimination, a plaintiff may still prove discrimination through the traditional *McDonnell Douglas* burden shifting framework. *Nall*, 917 F.3d at 342. To make a *prima facie* case on a claim under Section 504 of the RA, Knuppel must

---

[2] But even if the Court did regard HHSC's direct threat defense as evidence of discrimination, the inquiry does not end. The question becomes whether the discrimination was justified. *See Nall*, 917 F.3d at 349 (Costa, J., concurring) ("[T]he hard issue in this one is not whether there was discrimination but whether that discrimination was justified.").

6

prove she was (1) an individual with a disability; (2) otherwise qualified for the position; and (3) excluded from, denied the benefits of, or otherwise subjected to discrimination under the program "solely by reason of" her disability. 29 U.S.C. § 794(a). Here, HHSC does not contest whether Knuppel has a disability within the meaning of the Rehabilitation Act. The issues are whether Knuppel is an otherwise qualified individual and whether her termination is attributable solely to her disability.

If she succeeds in alleging a *prima facie* case, a rebuttable presumption of discrimination arises and the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *Nall*, 917 F.3d at 342; *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009). The employer's burden is one of production, not persuasion. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981). "If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

Once the employer does so, the burden shifts back to the plaintiff to show "substantial evidence" that the proffered reason is pretext for discrimination. *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016). "Pretext is established 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence."' " *Id*. (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). Knuppel has not demonstrated that she was "otherwise qualified" for the position and even if she had, she has not shown that HHSC's legitimate non-discriminatory justification was pretextual.

### 1. Knuppel is Not an "Otherwise Qualified Individual with A Disability."

An "otherwise qualified individual with a disability" is one who can perform the essential functions of her position with or without reasonable accommodation. 42 U.S.C. § 12111(8). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.*; *see Nall*, 917 F.3d at 343–44 (considering the duties provided to the former employee on the medical status form provided to the physician).

Courts generally defer to employers' determinations of which job functions are essential so long as the employer does not "move the goalposts" or otherwise manipulate the essential functions to arbitrarily exclude persons with disabilities. *See, e.g.*, *Nall*, 917 F.3d at 343, 348. For example, in *Nall*, the Fifth Circuit found a fact issue existed when, after an employee's physician cleared him to perform his job's essential functions based on the list provided by his employer, the employer's physician provided an additional list that "addresses the duties for which [the disability] may be of issue." 917 F.3d at 343. The necessity of one those requirements was refuted by the testimony of the employee's manager. *Id*. There was a further factual question over which specific job tasks the employee could allegedly not perform safely. *Id*. Neither of those fact issues exist here.

Here, the record is clear that HHSC provided Knuppel a single list of her position's essential functions near the beginning of her employment. Knuppel does not allege that HHSC modified her position's essential functions to be less favorable to her or epileptic individuals more generally. She does not challenge the essential functions of her position other than to contend that she rarely performed restraints during her almost six-month tenure. *See* Response at ¶ 27. But infrequency, on its own, does not diminish essentialness, and even if it did there are

8

several other specific and undisputed essential functions that Knuppel concedes she could not perform. Although Knuppel claims in her Response that she was able to perform all the essential functions of her position (Response at ¶ 26), she admitted in her deposition that she was, at times, unable to perform several of the essential functions of her job. She said while having a seizure she could not remain alert at all times; defend against an aggressive resident; perform a restraint; perform CPR; or minimize unsafe situations, including monitoring an assaultive or self-injurious patient. Knuppel Depo at 111:17–20; 111:23–112:1; 112:2–5; 114:1–6; 114:8–19. No reasonable jury could find that Knuppel could perform the essential functions of her position after she admitted in her deposition that she could not. *See Clark v. Charter Commc'ns, L.L.C.*, 775 F. App'x 764, 767 (5th Cir. 2019) (unpublished) (holding the court did not err in finding former employee who suffered narcolepsy was not qualified for the position when he conceded he would continue to suffer unplanned naps at an unknown frequency but disputed whether staying awake was an essential function of the position).

Even if a reasonable accommodation could have helped Knuppel perform the essential functions of the position, she admits she never requested one and that HHSC accommodated the only relevant restriction her physician placed on her. "I did not specifically request reasonable accommodations for my disability but was excused from driving. HHSC was aware of the need for accommodation despite me not having completed paperwork which would have mirrored my physician's restrictions." Knuppel Decl. at ¶ 10; *see also* Response at ¶ 9. HHSC accepted the physician's finding that she should not drive and modified her responsibilities accordingly. Further, Knuppel admits that if she did fill out the reasonable accommodation request paperwork that HHSC provided it "would have mirrored [her] physician's restrictions," which said she only needed to be excused from driving, working in high places, or using dangerous equipment. *See*

9

*id.* –Further, she has not identified any accommodations that, if adopted, would permit her to perform the essential functions of her position—even if merely identifying accommodations was sufficient under the law. *See, e.g.*, *Griffin v. United Parcel Serv.*, Inc., 661 F.3d 216, 224 (5th Cir. 2011) ("The ADA [and RA] provide[] a right to reasonable accommodation, not to the employee's preferred accommodation.").

### a. Direct Threat Affirmative Defense

Defendant also asserts the affirmative defense that Knuppel was not "otherwise qualified" for the position because her inability to perform the essential functions was a direct threat to the safety of herself or others in the facility. An employer is entitled to a direct threat defense if an employee poses a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *EEOC v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 731 (5th Cir. 2007) (quoting 42 U.S.C. § 12111(3)); *see also* 42 U.S.C. § 12113(b). Whether an employer has properly determined that a person poses a direct threat depends on "the objective reasonableness of [the employer's] actions." *Bragdon v. Abbott*, 524 U.S. 624, 650 (1998) ("[C]ourts should assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments[.]"). "The direct threat defense must be 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence,' and upon an expressly 'individualized assessment of the individual's present ability to safely perform the essential functions of the job[.]' " *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 86 (2002) (quoting 29 C.F.R. § 1630.2(r)); *see also E.I. Du Pont*, 480 F.3d at 731 ("The employer must make an 'individualized assessment of the individual's present ability to safely perform the essential function of the job.'

" (citations omitted)). The Fifth Circuit has not determined which party bears the burden of proof regarding a direct threat defense. *See Nall v. BNSF Ry. Co.*, 917 F.3d at 343 n.5.

Because Knuppel admitted she could not perform several of the essential functions of her position and HHSC accommodated the only relevant restriction identified by her physician, the Court does not need to determine whether Knuppel was a direct threat as a matter of law to find she was not "otherwise qualified" for the position. However, the Court notes above that this case is different from *Nall*, on which Knuppel heavily relies, in at least one important respect. There, the Fifth Circuit found the employer's direct threat defense "objectively unreasonable" because the employer's credibility was undermined by its actions. *Nall*, 917 F.3d 348. The employer's "intentional disregard for the best available objective evidence took the form of moving the goalposts during [the employee's] evaluation in order to produce [the employer's] desired outcome of disqualifying him" by submitting additional criteria specific to his disability after the employee was cleared under the initial criteria. *Id*. Here, HHSC never changed the essential functions of the position to reach a desired result. In fact, after Knuppel's first seizure, it fully accepted the physician's opinion and allowed Knuppel to return to work after her second seizure. After the third seizure, HHSC decided it could not continue to take the risk of relying on the same release. Its assessment was individualized because it did not categorically exclude—or attempt to exclude—all individuals with epilepsy. Instead, its decision was based on firsthand observations of how the repeated seizures disoriented and confused Knuppel for lengthy periods of time.

### 2. Knuppel has not Shown her Disability was the "Sole Cause" of her Termination

"An individual with a disability is excluded from, denied the benefits of, or otherwise subjected to discrimination under a program 'solely by reason of ... his disability' if (1) there is a

'causal connection' between his disability and the discriminatory action; and (2) his disability was 'the only cause' of the discriminatory action." *Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 222 (5th Cir. 2018) (unpublished). Here, Plaintiff has not offered any facts that might suggest she was "the only cause" of her termination was her epilepsy. She has not shown, for example, that a non-epileptic employee who also could not perform the essential functions of his or her position would not have been terminated during the probationary period.

### 3. Even if Knuppel Could Present a Prima Facie *Case, HHSC Has Articulated a Legitimate Non-Discriminatory Reason for Knuppel's Termination*

HHSC says it ended Knuppel's employment because she could not perform the essential functions of her position with or without reasonable accommodation, and the possible consequences of that give rise to safety concerns. HHSC has sufficiently articulated a reason that if "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *See Daigle*, 70 F.3d at 396; *see also Nall*, 917 F.3d at 342; *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d at 615.

### 4. *Knuppel Has Not Proven HHSC's Decision was Pretext for Discrimination*

Because HHSC has articulated a legitimate non-discriminatory business reason for terminating Knuppel—namely, she could not perform the essential functions of the position with or without reasonable accommodation—she has the burden to prove with "substantial evidence" that HHSC's justification was pretext for discrimination. *See Delaval*, 824 F.3d at 480. She cannot do so. Knuppel does not allege disparate treatment and has alleged no facts to suggest that HHSC's stated justification was "false or 'unworthy of credence'" *See id*.

Knuppel argues only that HHSC "rejected her physician's certification" and none of its affiants could name a single person who made the decision to end Knuppel's employment, but she does not suggest how either demonstrates pretext. Response at ¶ 36. She has not cited

authority that an employer must always accept a physician's release, even if it means disregarding the employer's own judgment, experience, and observations about the employee's disability in the workplace. Nor has she suggested how the decisionmaker's identity would show pretext. In short, Knuppel has not met her burden to create a fact issue that HHSC's justification was pretextual.

There is no evidence to suggest that HHSC harbored any animus towards Knuppel or any other individual suffering from epilepsy. Knuppel concedes that HHSC was aware that she suffered from epilepsy when it hired her. However, it reasonably relied on her representation that she was seizure free for a substantial period of time and that hiring her would not endanger the people that HHSC is responsible for their safety. After her first seizure that occurred just a few days after she started, HHSC did not terminate her, it placed her on paid leave even though she had been employed less than a week. HHSC reacted in a manner that showed great empathy for Patent License's condition and quite properly requested medical clearance from Knuppel's doctor. Once she complied, HHSC allowed her to return to work on conditions consistent with her physician's findings.

Unlike in *Nall*, HHSC never "moved the goalposts" to try to disqualify Knuppel. Since her first seizure, HHSC was consistent in the essential functions it expected her to perform. It gave Knuppel and her physician the benefit of accepting their assertions that she could do the job. After the third seizure, HHSC determined that it disagreed. Knuppel has not shown that decision to be discriminatory. Therefore, because Knuppel cannot prove with substantial evidence that HHSC's justification was pretext, HHSC is entitled to summary judgment.

### C. Retaliation

To establish a *prima facie* case of retaliation under the RA, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). Knuppel has not alleged she engaged in any protected activity. She was terminated before filing a complaint with the EEOC or this lawsuit, and she does not allege she was terminated for other produced activity such as reporting misconduct. HHSC could not have retaliated against Knuppel for something she has not done. Therefore, no genuine issue of material fact exists and HHSC is entitled to summary judgment on the retaliation claim.

### IV. CONCLUSION

IT IS THEREFORE ORDERED the Motion is **GRANTED** and the case is **DISMISSED** with prejudice.

SIGNED this 30th day of October, 2019.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE